1  Thomas H. Bienert, Jr., State Bar No. 135311
   tbienert@bmkattorneys.com
2  BIENERT, MILLER & KATZMAN, PLC
   903 Calle Amanecer, Suite 350
3  San Clemente, California 92673
4  Telephone (949) 369-3700
   Facsimile (949) 369-3701
5
6  Philip H. Hilder, Texas SBN 09620050 *(Pro Hac Vice Pending)*
   philip@hilderlaw.com
7  Paul L. Creech, Texas SBN 24075578 *(Pro Hac Vice Pending)*
   paul@hilderlaw.com
8  HILDER & ASSOCIATES, P.C.
9  819 Lovett Blvd.
   Houston, Texas 77006
10 Telephone (713) 655-9111
   Facsimile (713) 655-9112
11
12
13 Attorneys for Plaintiff/Relator
   Under Seal A & B
14
15
16              IN THE UNITED STATES DISTRICT COURT
17            FOR THE CENTRAL DISTRICT OF CALIFORNIA

18 UNDER SEAL A & B,                    Case No.
19
20       Plaintiff,                     **FILED *IN CAMERA* AND UNDER SEAL**
                                        **DO NOT ENTER ON PACER**
21 v.
22                                      **PLAINTIFF'S ORIGINAL COMPLAINT**
   UNDER SEAL C, D, and E,              **PURSUANT TO THE FEDERAL FALSE**
23                                      **CLAIMS ACT, 31 U.S.C §§ 3729-3732**
24       Defendants.
                                        **DO NOT ENTER ON PACER**
25                                      **DO NOT PLACE IN PRESS BOX**
26
27
28        **FILED UNDER SEAL AS REQUIRED BY 31 U.S.C. § 3730(b)(2)**

Thomas H. Bienert, Jr., State Bar No. 135311
tbienert@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile (949) 369-3701

Philip H. Hilder, Texas SBN 09620050 *(Pro Hac Vice Pending)*
philip@hilderlaw.com
Paul L. Creech, Texas SBN 24075578 *(Pro Hac Vice Pending)*
paul@hilderlaw.com
HILDER & ASSOCIATES, P.C.
819 Lovett Blvd.
Houston, Texas 77006
Telephone (713) 655-9111
Facsimile (713) 655-9112

Attorneys for Plaintiff/Relator
Michael Edman

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. Michael Edman,<br><br>        Plaintiff,<br><br>v.<br><br>MA Laboratories, Inc., iMicro, Inc., Sole Source Technology, LLC,<br><br>        Defendants. | Case No.<br><br>**FILED _IN CAMERA_ AND UNDER SEAL DO NOT ENTER ON PACER**<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C §§ 3729-3732**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C §§ 3729-3732**

# ORIGINAL COMPLAINT

*Qui tam* Relator Michael Edman ("Edman" or "Relator"), individually and on behalf of the United States of America, alleges as follows:

## JURISDICTION AND VENUE

1.       Edman files this action on behalf of the United States of America ("Government" or "United States") seeking damages and civil penalties against the Defendants for violations of 31 U.S.C. § 3729 (a).

2.       This Court's jurisdiction over claims for violations of 31 U.S.C. § 3729 (a) is based upon 31 U.S.C. § 3732(a). Additionally, the claims raise federal questions, 28 U.S.C. § 1331, and the United States is a plaintiff, 28 U.S.C. § 1345.

3.       Venue is vested in this Court under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391 (b)-(d) because at least one of the Defendants transacts business in the Central District of California and many acts constituting violations of 31 U.S.C. § 3729(a) occurred in the Central District of California.

## INTRODUCTION

4.       MA Laboratories, Inc. ("MA Labs"), iMicro, Inc. ("iMicro"), and Sole Source Technology, LLC ("Sole Source") (collectively, "Defendants") submitted or caused the submission of false and fraudulent claims to the United States in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732, as amended, in part, by repackaging iMicro's "Made in China" products to conceal that the products sold under Federal Service Contracts, including Synnex Corporations and Dell, Inc.'s General Services Administration ("GSA") Multiple Award Schedule ("MAS") contracts, were in violation of the Trade Agreements Act ("TAA"). The TAA requires that most goods sold to the United States Government come from countries with which the United States has trade agreements, i.e. TAA designated countries. Defendants submitted or caused the submission of claims for payment that made specific representations that the goods provided were TAA compliant and failed to disclose the Defendants' noncompliance with the TAA. In fact, Defendants

1   agreed to, and did carry out, a scheme to rebox computer products to disguise their country

2   of origin and sell the products to the United States in violation of the TAA and FCA.

3                                                  **THE PARTIES**

4         5.     Edman is a resident and citizen of the United States, the State of California,

5   and of The Central District of California. Edman brings this action on behalf of the United

6   States under 31 U.S.C. § 3730(b). Edman is a former employee of Sole Source. He was

7   employed by Sole Source as a sales representative from September 1, 2010, to March 1,

8   2015. In his capacity at Sole Source, Edman gained direct and independent knowledge of

9   the allegations contained in this Complaint.

10         6.     MA Labs, a business formed under the laws of the State of California,

11   transacted business in, among other places, the Central District of California. MA Labs is

12   in the business of computer equipment products wholesale distribution. MA Labs is located

13   at 2075 North Capitol Avenue, San Jose, California 95132. MA Labs' registered agent for

14   service of process with the California Secretary of State is Abraham C. Ma at the above

15   address.

16         7.     iMicro, a business formed under the laws of the State of California, transacted

17   business in, among other places, the Central District of California. iMicro is the in business

18   of manufacturing computer equipment products. iMicro is also located at 2075 N. Capitol

19   Ave., San Jose, California 95132, the same address as MA Labs. iMicro and MA Labs

20   share office space, employees, and have common ownership. Likewise, iMicro's registered

21   agent for service of process with the California Secretary of State is Abraham C. Ma.

22         8.     Sole Source, a business formed under the laws of the State of California,

23   transacted business in, among other places, the Central District of California. Sole Source

24   is in the business of computer equipment products distribution. Sole Source is located at

25   92 Argonaut, Suite 100, Aliso Viejo, California 92656. Sole Source's registered agent for

26   service of process with the California Secretary of State is Kelly Pieropan at the above

27   address. Sole Source advertises itself as a supplier of TAA compliant and Made in the USA

28   products.



TAA COMPLIANT & MADE IN THE USA PRODUCTS

Experience With Federal Procurement Contracts

- Complete Traceability to the Source
- Product Certification
- Established Compliant Sources
- Detailed Product Knowledge
- Firm Supply Chain Control








## **THE LAW**

9.    The FCA provides in relevant part that:

     (a)  Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government; ... or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to Government, ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of the damages which the Government sustains because of the act of that person ... (b) for purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(a).

PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL
FALSE CLAIMS ACT, 31 U.S.C §§ 3729-3732

10.    Actions may be brought by private persons:

A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting. 31 U.S.C. §3730(b)(1).

11.    A Qui Tam Plaintiff is entitled to share of award:

If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action …

If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds.

31 U.S.C. §§ 3730(d)(1), (2).

## THE TRADE AGREEMENTS ACT

12.    The TAA was enacted by Congress on July 26, 1976, as part of Public Law 96-39, 93 Stat. 144, codified at 19 U.S.C. § 2501 *et seq*. The TAA governs trade agreements negotiated between the United States and other countries under the Trade Act of 1974. The TAA was passed in order to approve and implement trade agreements negotiated under the Trade Act of 1974, which was enacted to foster the growth and maintenance of an open world trading system, to expand opportunities of the commerce of the United States in international trade, to improve the rules of international trade, and to provide for the enforcement of those rules. *See* 19 U.S.C. § 2502. The TAA requires that all goods sold to the United States must be manufactured in the United States or a TAA designated country. *See* 19 U.S.C. § 2512 (a).

13.     Federal Acquisition Regulations ("FAR") subpart 25.4 includes guidance for TAA compliance.  In general, a product is TAA compliant if it is made in the United States or a "Designated Country."  Designated Countries include those with a free trade agreement with the United States, including Canada, Mexico, Australia, Singapore, and other countries; countries that participate in the World Trade Organization Government Procurement Agreement, including Japan and many countries in Europe; several "least developed countries," including Afghanistan, Bangladesh, Laos, Ethiopia, and others; and Caribbean Basin countries such as Aruba, Costa Rica, Haiti, and others.  A full list of the Designated Countries appears in FAR 25.003.  The People's Republic of China is **not** on the list of TAA Designated Countries.

14.     The GSA administers Federal Supply Schedule ("FSS") also known as the Multiple Award Schedule ("MAS").  The FSS program provides Federal agencies with a simplified process for obtaining commercial supplies and services at prices associated with volume buying.  The GSA FSS/MAS establishes contractor relationships with a broad variety of commercial sellers to offer Government agencies shorter procurement lead-time, lower administrative costs, and reduced inventories.  The procedures used to purchase goods and services on the MAS vary based on the dollar amount of the procurement and whether or not a Statement of Work is required. "Federal Services Contracts" are multiple-award indefinite delivery/indefinite quantity (IDIQ) contracts, whether Government-wide or agency specific contract vehicles for Government procurement of TAA compliant products.  In addition to GSA MAS, Federal Services Contracts include Information Technology Enterprise Solutions - 2 Services (ITES-2S) contracts, Solutions for Enterprise-Wide Procurement Enterprise Acquisition Gateway for Leading-Edge Solutions II (EAGLE II).

15.     The TAA applies to any procurement that exceeds $193,000.  GSA applies the threshold on a schedule-wide basis, and therefore the TAA applies to all schedule contracts and all orders under those contracts, with some exceptions for small business entities, not applicable here.  All schedule products and services, therefore, must come from the United

States or a Designated Country.  Compliance with TAA is material to the Government's payment decision when it specifically orders TAA compliant products.

## FCA VIOLATIONS PREMISED ON TAA VIOLATIONS

16.     Companies that sell the United States products made outside of the United States and Designated Countries in violation of the TAA can be liable to the United States for violations of FCA 31 U.S.C. §§ 3729(a). *See, e.g., U.S. ex rel. Folliard v. CDW Tech. Services, Inc.*, 722 F. Supp. 2d 20, 37 (D.D.C. 2010); *U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1232 (D.C. Cir. 2012); *U.S. ex rel. Simmons v. Samsung Elecs. Am., Inc.*, 116 F. Supp. 3d 575, 576 (D. Md. 2015).

17.     Companies, like iMicro, MA Labs, and Sole Source, "will be liable for violations of the False Claims Act if its employees were acting within the scope of their authority and for the purpose of benefitting the corporation." *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977); *see also Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-66, 102 S. Ct. 1935, 1942, 72 L. Ed. 2d 330 (1982) ("[P]rincipals are liable when their agents act with apparent authority."); *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 353 (5th Cir. 2013) (corporation is liable for misconduct of employees acting (a) within the scope their employment, or (b) outside the scope of their employment with apparent authority).

18.     The Government's harm under a benefit of the bargain analysis, in absence of tangible harm, is the failure to purchase eligible TAA products under a program designed with that policy purpose. *See United States. ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 473 (5th Cir. 2009).   In cases where there is no tangible harm to the Government and the intended intangible benefit to the United States was to further a policy goal, it is appropriate to value damages in the amount the Government actually paid to the defendants. *Id.*

19.     If the Government paid for TAA compliant products that it did not receive, then it is denied the fulfillment of its policy objective of steering money to manufacturers and distributers of products made in the United States, one of its trade agreement partners,

or other Designated Countries. *See* 19 U.S.C. § 2502, FAR 25.003.  Therefore, the potential damages are amount paid for the non-compliant products by the Government without offset, because the potential defendants robbed the United States of fulfilling its policy goals, inflicting it with an incalculable intangible harm. *See Longhi*, 575 F.3d at 473.

20.     The amount of the United States' payments should be tripled, and the statutory penalty added for each of the invoices.  The Supreme Court explained that when deducting the "bargain" received from a defendant, a court must begin with the already doubled (now tripled) amount. *See Longhi*, 575 F.3d at 473, *citing United States v. Bornstein*, 423 U.S. 303, 314 (1976) (superseded on other grounds).  If an offset were allowed for any benefit the Government received, the offset would come off the treble damages, not before. *See Longhi*, 575 F.3d at 473.

21.     Liability under the FCA attaches when the defendant submits a claim for payment that makes specific representations about the goods provided, but fails to disclose the defendant's noncompliance with a statutory requirement, such as TAA compliance, when the omission renders those representations misleading. *See Universal Health Services, Inc. v. United States*, 15-7, 2016 WL 3317565, at *3 (U.S. June 16, 2016).

## THE REBOXING SCHEME

22.     MA Labs, iMicro, and Sole Source submitted or caused the submission of false and fraudulent claims to the United States for computer products sold to the Government under Federal Service Contracts that were in violation of TAA, in that the products were manufactured in China and were repackaged to disguise that fact.  Since, July 11, 2013, Sole Source, iMicro, and MA Labs have sold an estimated $8 million worth of computer equipment and supplies to the Government through Synnex Corporation ("Synnex") and/or Dell, Inc. ("Dell"), Government contractors and distributers to Value Added Resellers ("VARs").  Synnex either sold directly to the Government under its own GSA MAS Schedule 70, awarded under Contract No. GS-35F-0143R, or indirectly through Dell's GSA MAS Contract No. GS-35F-4076D and other Federal Services Contracts.  Of that amount, an estimated $2 million was sold in violation of Sole Source, iMicro, and MA Labs'

obligations under the TAA.  The factual allegations contained in this Complaint are derived from Relator's personal knowledge and experience.

### A.  MA Labs/iMicro Agreed with Sole Source to Disguise Origin of Products Sold to the United States.

23.    On July 11, 2013, while employed at Sole Source, Edman received an email from MA Labs/iMicro account manager, Edith Yam, intended for Bob Powell, Sole Source Vice President of Purchasing, and Mike Keskinen, Sole Source Purchasing Manager.[1]

Thu, Jul 11, 2013 at 3:01 PM

Edith Yam <Edith.Yam@malabs.com>
To: Bob Powell <bob@solesourcetech.com>, Mike Jones <mike@solesourcetech.com>

Bob,

Good news !! inside in China is on the package box only, as per attachment. Will send you 2 more pictures in another email.

My warehouse guy can repack with another box, just need to have at least 1 day advance notice.

860(UMO-M1565U1S) 50(9)  2.9G USB OPTICAL MOUSE BLACK
        Net price for 300 pcs @$1.35
        will ship from SJ so that SJ warehouse guy can do it as what we planned

_[illegible line]_

thanks,

Yours Sincerely,
Edith Yam
Account Manager
Malabs Inc./iTExpress/Supertalent
Direct : 1-408-957-8144
Phone : 1-408-941-0808 ext 144
Fax :    1-408-947-0808
Email/Skype : edith.yam@malabs.com                                        [2]

24.    The email states that the "Made in China" legend on the USB computer mouse boxes were not the individual mouse boxes but only the outer shipping boxes.  The MA

---

[1] While employed at Sole Source, Relator's email address was mike@solesourcetech.com. Relator was also known as Mike Jones, using his mother's maiden name while employed at Sole Source.  Email intended for Michael Keskinen, michael@solesourcetech.com, was inadvertently sent to Relator on occasion.
[2] MA Labs and iMicro share employees and offices.  iMicro's sales representatives are MA Labs employees with @MALabs.com email addresses and work in MA Labs offices. These employees wear two hats, acting as agents for both iMicro and MA Labs. *See* http://www.imicro.com/index.php?ui=company (last visited June 20, 2016).

Labs/iMicro representative then states that MA Labs/iMicro's San Jose, California, warehouse can repackage the computer mice into a box without the "Made in China" legend with a day notice.  The email included a photo of the iMicro branded computer mouse box which states the products are "Made in China."



25.     That same day, Yam emailed Relator copies of two invoices from MA Labs to Sole Source, each with the note:

"PLS USE NEW BROWN BOX TO PACK 300 PCS DON'T USE IMICRO
BROWN BOX FOR CUSTOMER CANNOT ACCEPT PRODUCT MADE
IN CHINA THS."

PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL
FALSE CLAIMS ACT, 31 U.S.C §§ 3729-3732



**B.** **False Claims, Based on the Foregoing Practices, Were Presented to the United States for Payment.**

26.     Sole Source tracks sales to the Government under Synnex/Dell's Federal Service Contracts under the customer name "Synnex Corporation."  Relator reviewed order history, some of which is attached as Exhibit "A," which indicates that Sole Source heavily utilized Synnex/Dell's Federal Service Contracts since at least 2011.  Relator visually inspected the warehouse area at 92 Argonaut, Suite 100, Aliso Viejo, California, during his employment and found empty iMicro boxes.  As recently as March 2016, Relator revisited the exterior of the Sole Source warehouse and observed empty iMicro boxes in a refuse pile, which he understands to mean that the scheme continued to at least this date.

PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL
FALSE CLAIMS ACT, 31 U.S.C §§ 3729-3732

27.     The United States is billed by either Synnex or Dell under their respective Federal Service Contracts.  Sole Source bills Synnex as if Synnex is the customer, but knows that the United States is the end purchaser requiring TAA compliant products.  The products are described on iMicro/MA Labs and Sole Source invoices with the designation "TAA."

28.     Synnex and Dell enter into manufacture partner agreements with merchants, such as Sole Source, to bill the United States Government using their Federal Service Contracts.[3]  Under these agreements, the Government Federal Service Contract holders bill the Government under their Federal Service Contracts, and remit the lion's share of the proceeds to the distributor, in this case, Sole Source.

29.     Most often, Dell purchases TAA products from Synnex and bills the United States under Dell's Federal Service Contracts.  In those cases, Synnex purchases TAA compliant products from Sole Source.  Sole Source ships directly to the United States end-purchaser and bills Synnex.  Synnex bills Dell, who in turn bills the United States under Dell's own Federal Service Contracts.

30.     Many times Synnex purchases TAA compliant products from Sole Source.  Sole Source ships directly to the United States end-purchaser and bills Synnex.  In these cases, Synnex bills the United States under Synnex's own Federal Service Contracts.

31.     Sole Source, iMicro, and MA Labs know (i) the customer is the United States, (ii) the products are "Made in China," (iii) that the United States requires products to be TAA compliant, and (iv) "Made in China" products are not TAA compliant.  iMicro, MA Labs, and Sole Source repackage these products to disguise from the United States the fact that the products are not, in fact, TAA compliant.

**C.     The Contents of Invoices Identify the Products as TAA Compliant and Often Identify a United States Agency as the End-Purchaser.**

[3]  *See* http://ec.synnex.com/govsolv/solutions/contracts/gsa.html (last visited Mar. 21, 2016).

11

PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL
FALSE CLAIMS ACT, 31 U.S.C §§ 3729-3732

32.    Edman reviewed Sole Source's billing, shipping, and accounting program. Specifically, he reviewed the Synnex customer data relating to the MA Labs/iMicro products, some of which is attached as Exhibit "A."   Sole Source paid MA Labs an additional 9% fee to repackage the "Made in China" non-TAA compliant products into plain brown boxes.

33.    The bills do not identify the products as being "Made in China."  The claims instead describe the products with the designation "TAA."  Most, if not all, the products are 'drop shipped,' which denotes the products are shipped directly from Sole Source to the Government end-purchaser including:

       a.  the U.S. Army, Communications-Electronics Research, Development and Engineering Center at Aberdeen Proving Ground, Maryland;



       b.  the U.S. Army, Program Executive Office, Aviation, Apache Attack Helicopter Project Office, Redstone Arsenal, Alabama; and

PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL
FALSE CLAIMS ACT, 31 U.S.C §§ 3729-3732





c. the U.S. Army, Headquarters, U.S. Army Criminal Investigation Command, Fort Belvoir, Virginia.

| NAME   ADDRESS | SHIP TO |
|---|---|
| Synnex Corporation | ARMY HQDA G-1 CIVILIAN |
| 44201 Nobel Drive | 6010 6TH ST |
| Fremont, CA 94538 | BLDG 1465 (CUST PO# |
| | FORT BELVOIR, VA 2200 |
| | 00279110494081301 |

**D.** **Sole Source's Internal Accounting System Indicates it Obtained Reimbursements as a Result of the Forgoing Claims.**

34.     Relator confirmed in Sole Source's accounting software that for 2014, Sole Source received $2,246,975.36 in revenue from United States Government through Synnex and Dell's Federal Service Contracts:

| Synnex Corporation -001 | 2,246,975.36 |
|---|---|

**FIRST CLAIM FOR RELIEF**
**Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presenting False Claims**

35.     Relator realleges and incorporates by reference paragraphs 1 through 34, inclusive, of this Complaint as though set forth at length.

36.     Since July 11, 2013, and continuing to the present, iMicro, MA Labs, and Sole Source knowingly submitted or caused to be submitted false and fraudulent claims for payment and reimbursement by the United States Government by knowingly or recklessly making false statements about the Country of Origin of the products offered for sale to the United States Government.  Defendants' specific representations about that goods provided were TAA compliant, but failed to disclose the Defendants' noncompliance with the TAA, the omission of which renders those representations misleading.

37.     The United States was unaware of the falsity of the claims made or caused to be made by iMicro, MA Labs, and Sole Source, and in reliance on the accuracy thereof,

14

paid the false claims because the Defendants knowingly sold products to the Government that did not originate in the United States or a TAA Designated County.

### SECOND CLAIM FOR RELIEF
#### Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
#### Making False Statements

38.    Relator realleges and incorporates by reference paragraphs 1 through 37, inclusive, of this Complaint as though set forth at length.

39.    Since July 11, 2013, and continuing to the present, iMicro, MA Labs, and Sole Source knowingly made or caused to be made or used false statements to obtain payments from the United States for false or fraudulent claims because they caused Sole Source and/or Synnex/Dell Federal to falsely certify that all products it sold and offered for sale to the United States Government originated in the United States or Designated Countries as defined by the TAA, *inter alia*, by certifying that it truthfully and honestly provided accurate information to the United States regarding the Country of Origin of products that it sold to the United States Government, when in fact iMicro, MA Labs, and Sole Source made or caused to be made false and misleading information about the Country of Origin of the goods sold to the United States Government.

40.    The United States was unaware of the falsity of the statements made or caused to be made by iMicro, MA Labs, and Sole Source and in reliance on the accuracy thereof, paid the false claims because the Defendants knowingly sold products to the Government that did not originate in the United States or a TAA Designated County.

### THIRD CLAIM FOR RELIEF
#### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
#### Conspiracy to Violate False Claims Act

41.    Relator realleges and incorporates by reference paragraphs 1 through 40, inclusive, of this Complaint as though set forth at length.

42.    Since July 11, 2013, and continuing to the present, iMicro, MA Labs, and Sole Source entered into a conspiracy to defraud the United States by causing false and fraudulent claims to be paid and approved in violation of 31 U.S.C § 3729(a).

15

43. iMicro, MA Labs, and Sole Source committed overt acts in furtherance of the conspiracy above, *inter alia*, repackaging iMicro products so that the boxes used to ship the products to United States Government buyers did not have the "Made in China" legend and creating invoices that describe their products as TAA compliant.

44. The United States was unaware of the falsity of the claims and/or statements made or caused to be made by iMicro, MA Labs, and Sole Source and in reliance on the accuracy thereof, paid the false claims because the Defendants knowingly sold products to the Government that did not originate in the United States or a TAA Designated County.

## PRAYER FOR RELIEF

WHEREFORE, Qui Tam Plaintiff/Realtor, Michael Edman, requests that judgment be entered in its favor and against Defendants jointly and severally as follows:

A. Three times the amount of damages that the Government sustains because of the acts of the Defendants;

B. A civil penalty of $5,000-$10,000 for each false claims violation, and $100,000 civil penalty per circumvention scheme;

C. An award to the Qui Tam Plaintiff for collecting the civil penalties and damages;

D. Award of an amount for reasonable expenses necessarily incurred;

E. Award of the Qui Tam Plaintiff's reasonable attorneys' fees and costs;

F. Interest; and

G. Such further relief as the Court deems just.

PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C §§ 3729-3732

1   Dated:  October 3, 2016                Respectfully Submitted,
2                                          BIENERT, MILLER & KATZMAN, PLC
3                                          By
4                                              Thomas H. Bienert, Jr.
5
6                                          HILDER & ASSOCIATES, P.C.
7
8                                          By: /s/ Philip H. Hilder
9                                              Philip H. Hilder
                                               Texas State Bar No. 09620050
10                                             Paul L. Creech
                                               Texas State Bar No. 24075578
11                                             819 Lovett Blvd.
                                               Houston, Texas 77006
12
13                                         *Attorneys for Plaintiff/Relator
                                           Under Seal A & B*
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO THE FEDERAL
FALSE CLAIMS ACT, 31 U.S.C §§ 3729-3732